# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EPSILON-NDT ENDUSTRIYEL
KONTROL SISTEMLERI SANAYI VE
TICARET A.S.,

    Plaintiff,

    v.

POWERRAIL DISTRIBUTION, INC.,

    Defendant.

NO. 3:18-CV-00821

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me is a Motion to Dismiss (Doc. 17) filed by Defendant PowerRail Distribution. PowerRail contends that this Court lacks subject matter jurisdiction over Plaintiff Epsilon-NDT Endustriyel Kontrol Sistemleri's ("Epsilon's") claims due to failure to join an indispensable party, or in the alternative, that Epsilon has failed to state a claim upon which relief may be granted. Because this Court has subject matter jurisdiction, no absent party is indispensable, and Epsilon has plausibly stated its three claims, PowerRail's Motion will be denied.

## I. Background

The facts from Epsilon's Complaint (Doc. 1), taken as true and viewed in the light most favorable to Epsilon, are as follows:

Epsilon is a Turkish joint-stock company, with a principal place of business in Istanbul, that sells equipment, parts, and services to industrial clients. (Doc. 1 at ¶¶ 1, 5). Many of Epsilon's rail transport clients "operate American-designed or American-made locomotives and rolling stock." (*Id.* ¶ 7). Accordingly, Epsilon works with North American suppliers like Rail & Traction Canada ("RTC"), located in Ontario, Canada. (*Id.* ¶ 14). RTC, in turn, works with PowerRail, a Pennsylvania corporation. (*Id.* ¶¶ 2, 18).

After securing a lucrative contract with Egyptian National Railways for the sale of spare parts for diesel locomotives, Epsilon contracted with RTC to get the parts. (*Id.* ¶¶ 11,

23; *see* Doc. 1-2 (the RTC contract)). Pursuant to the RTC contract, Epsilon made an advance payment of $172,000. (Doc. 1 at ¶ 25). However, when the time came for RTC to perform, RTC failed to deliver—even though "RTC had already acquired most, if not all, of" the parts for Epsilon's order. (*Id.* at ¶¶ 26-27). Instead, RTC wound up its business in Canada, closed its operating facility, and delivered the parts intended for Epsilon to PowerRail's facilities in Duryea, Pennsylvania. (*Id.* ¶¶ 28-29). RTC did this, according to Epsilon, because PowerRail caused it to—49% of RTC's shares were owned by PowerRail's CEO, and PowerRail was so heavily involved in RTC's operations that it "effectively controlled RTC and its business." (*Id.* ¶¶ 15-22).

Despite Epsilon's numerous requests, PowerRail refused to deliver the parts in its possession or refund Epsilon's $172,000 advance payment. (*Id.* ¶¶ 31-32). Even though PowerRail has assumed RTC's other contracts, assumed the RTC contract with Epsilon, and handled all of Epsilon's inquiries regarding the RTC contract, PowerRail still refuses to perform. (*Id.* ¶¶ 30, 32, 36). Epsilon was unable "to locate a supplier that could provide substantially equivalent goods within the delivery timeframe" required by its contract with Egyptian National Railways, and suffered damages as a result. (*Id.* ¶¶ 33, 39).

Epsilon filed its Complaint on April 16, 2018, alleging three causes of action against PowerRail: Breach of Contract (Count I), Unjust Enrichment (Count Two), and Tortious Interference (Count Three). RTC was not named as a defendant. PowerRail filed its Motion to Dismiss (Doc. 17) on June 29, 2018, arguing that RTC is an indispensable party to this action and that in any event Epsilon has failed to state a claim upon which relief may be granted.

The Motion has been fully briefed and is ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, my role is limited to determining if a plaintiff is entitled to offer evidence in support of his or her claims. *See Semerenko v.*

2

*Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). A court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, a court considers the allegations in the complaint. In addition to the allegations found in the complaint, the court may examine "exhibits attached to the complaint, matters of public record," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), and "legal arguments presented in memorandums or briefs and arguments of counsel," *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002) (quotation omitted). Additionally, I may consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Am. Corp. Soc'y v. Valley Forge Ins. Co.,* 424 F. App'x 86, 88 (3d Cir. 2011) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). I may also consider a "document integral or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). At bottom, documents may be examined by a court when ruling on a motion to dismiss when the plaintiff had proper notice of the existence of the documents. *Id.* I need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

PowerRail moves to dismiss Epsilon's Complaint on two grounds: first, that this Court lacks subject matter jurisdiction because RTC is an indispensable party to this action whose joinder would destroy diversity; and second, that Epsilon's claims are not facially plausible and must therefore be dismissed under Federal Rule of Civil Procedure 12(b)(6).

**A.     Failure to Join an Indispensable Party**

PowerRail argues this suit must be dismissed under Federal Rule of Civil Procedure 12(b)(1) as RTC is an indispensable party. (Doc. 18 at 2-7; Doc. 30 at 10-15). As an initial

matter, this Court has subject matter jurisdiction over all claims alleged in the Complaint pursuant to 28 U.S.C. § 1332(a)(2). (*See* Doc. 1 at ¶¶ 1-3). A pre-answer challenge to a plaintiff's failure to join an indispensable party is governed by Federal Rule of Civil Procedure 12(b)(7), not Rule 12(b)(1), even though joinder of that party would destroy diversity jurisdiction. *See Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 441 (W.D. Pa. 2016); *Halim v. Donovan*, No. CIV.A. 12-00384 CKK, 2013 WL 595891, at *2 (D.D.C. Feb. 15, 2013) (Rule 19 "*presumes* the preexistence of subject matter jurisdiction").

There are two steps to a Rule 12(b)(7) analysis. I must first determine whether RTC is a "necessary" party. Fed. R. Civ. P. 19(a); *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). If RTC is a necessary party, then I must next determine whether RTC is "indispensable," as both Epsilon and PowerRail agree that RTC's joinder would defeat diversity. Fed. R. Civ. P. 19(b); *Gen. Refractories Co.*, 500 F.3d at 312. If RTC is both necessary and indispensable, then Epsilon's action "cannot go forward." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993).

RTC is a necessary party under Rule 19(a). A "party to a contract which is the subject of the litigation is a necessary party." *Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461, 467 & n.32 (D. Mass. 2011) (quotation omitted) (collecting cases); *Abella v. Seven Seven Corp. Grp.*, No. CIV. 2:13-05263 WJM, 2014 WL 220570, at *4 (D.N.J. Jan. 21, 2014). Here, Epsilon's contract with RTC and RTC's actions in breach of that contract are the subject of this litigation, so RTC is a necessary party. It does not make a difference that Epsilon alleges and argues that RTC was PowerRail's alter ego or agent, or that PowerRail assumed the RTC contract, (*see* Doc. 21 at 21-24), as RTC should still "be given a seat at the table to defend itself" from such allegations. *Abella*, 2014 Wl 220570, at *5 (absent party was necessary even if it was the defendant's alter ego, agent, or assignor of the contract at issue). This is the case even for Epsilon's unjust enrichment and tortious interference claims, because "[e]ach of the claims, regardless of the legal labels attached to it, involves [RTC's] conduct under the contract[]" and any finding involving the contract would "necessarily affect" RTC's rights. *Corsi v. Eagle Publ'g, Inc.*, No. 1:07-CV-02004ESH, 2008

5

WL 239581, at *3, 5 (D.D.C. Jan. 30, 2008) (finding the absent contracting party necessary and indispensable as to breach of contract, unjust enrichment, and tortious interference claims). As an example, a claim for tortious interference requires an underlying breach of contract. *Id.* at *3; *accord Kernaghan v. BCI Commc'ns, Inc.*, 802 F. Supp. 2d 590, 596 (E.D. Pa. 2011) (Pennsylvania law).

However, at this juncture, I am unpersuaded that RTC is an indispensable party. The mere fact that RTC is a contracting party does not make it indispensable. *See, e.g.*, *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) ("[The] bright-line rule that all parties to a contract are indispensable . . . is inconsistent with Rule 19(b)'s flexible standard."). Rule 19(b) lays out four factors for me to consider in deciding whether RTC is indispensable: (1) how a judgment in RTC's absence would prejudice it; (2) how prejudice could be lessened by "protective provisions," "shaping the relief," or "other measures;" (3) if a judgment in RTC's absence would be adequate; and (4) if Epsilon "would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b). Taking the allegations in the Complaint as true, and viewing them in Epsilon's favor, it appears that RTC is insolvent. (Doc. 1 at ¶ 29). If that is the case, then the first three factors weigh heavily against finding RTC indispensable because RTC "possesses no assets to support any judgment against it." *U.A.W., Local 1500 v. Bristol Brass Co.*, 123 F.R.D. 431, 433 (D. Conn. 1989) (insolvency of a non-party renders it not indispensable); *see BMG Music v. Vanxy, Inc.*, No. 98 CIV. 6496 (RO), 1999 WL 493345, at *2 & n.5 (S.D.N.Y. July 12, 1999) (concluding that a bankrupt non-party was not a necessary party, even if the non-party still "existed"). It may be that RTC is not in fact insolvent, or that under Ontario law, the legal effects of closing shop, winding up business, and insolvency would counsel a different conclusion as to indispensability. But judging solely by the Complaint, as I must, RTC is not an indispensable party. Epslion's failure to join RTC therefore does not warrant dismissal of the Complaint.

**B.     Failure to State a Claim**

PowerRail also moves to dismiss the Complaint on the ground that Epsilon has failed

to state a claim upon which relief may be granted. (Doc. 18 at 8-15; Doc. 30 at 1-10). Epsilon alleges claims for breach of contract, unjust enrichment, and tortious interference.

1. Breach of Contract

The issue with the breach of contract claim, PowerRail argues, is that RTC was the party Epsilon contracted with, so PowerRail cannot be liable under the contract. Epsilon advances three theories for holding PowerRail liable in RTC's place under the contract: alter ego, agency, and assumption. (Doc. 21 at 10-14). Only one of these three theories needs to be viable in order for Epsilon to survive PowerRail's Motion to Dismiss because the inquiry at this stage is focused on whether Epsilon has stated a claim, not whether it has stated a legal theory supporting a claim. *See Devon IT, Inc. v. IBM Corp.*, No. CIV.A. 10-2899, 2013 WL 7039608, at *32 (E.D. Pa. Dec. 30, 2013) ("[A] claimant is not required to set forth any legal theory or argument in a pleading.").

Looking solely to the Complaint, Epsilon has adequately pled PowerRail's assumption and breach of the RTC contract. Neither party has raised the issue of conflict of laws in its briefing on assumption, so I apply Pennsylvania law. *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 58 n.11 (3d Cir. 1977). The Complaint states that PowerRail has "assumed and performed obligations under various other [RTC] contracts," (Doc. 1 at ¶ 30), "received and accepted payment due to RTC under those contracts," (*id.*), "handled all inquiries by Epsilon related to [its contract with RTC,]" (*id.*), and took possession of the goods identified to Epsilon's contract (*id.* ¶ 28). These allegations plausibly suggest that PowerRail assumed the RTC contract, perhaps through assignment or delegation, by "stand[ing] in the shoes of [RTC] and assum[ing] all of [its] rights." *Smith v. Cumberland Grp., Ltd.*, 687 A.2d 1167, 1172 (Pa. Super. Ct. 1997) (citing Restatement (Second) of Contracts §§ 317, 318, 323 (1981)). Count One of the Complaint will therefore not be dismissed.

2. Unjust Enrichment

Next is Epsilon's unjust enrichment claim. PowerRail argues that because Epsilon has pled the existence of a contract between themselves, Epsilon cannot maintain a claim

for unjust enrichment. (Doc. 18 at 8-9; Doc. 30 at 10).

Epsilon is pleading in the alternative, though. (Doc. 21 at 19). It is true that Epsilon cannot recover for both breach of contract and unjust enrichment, *see Constar, Inc. v. Nat'l Distribution Ctrs., Inc.*, 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000), but Epsilon may at the pleading stage "state as many separate claims . . . as it has, regardless of consistency," Fed. R. Civ. P. 8(d)(3). Thus, by way of example, if it becomes clear through discovery that a contract only existed between Epsilon and RTC, Epsilon may still pursue its unjust enrichment claim against PowerRail because no contract between them would stand in the way. Accordingly, Epsilon has adequately pled unjust enrichment, and Count Two of the Complaint will not be dismissed.

### 3. Tortious Interference

Finally, PowerRail challenges Epsilon's tortious interference claim. PowerRail contends that Epsilon has not sufficiently pled intent and lack of privilege or justification. (Doc. 18 at 9). "In order to prevail on a claim for intentional interference with contractual or prospective contractual relations, a plaintiff must prove . . . purposeful action on the party of the defendant, specifically intended to harm the existing relation, or to prevent the prospective relation from occurring." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998) (quoting *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1988)). The defendant must also have acted without any privilege or justification, which can be satisfied by showing the defendant employed "wrongful means," which in turn requires that the means employed "be actionable for a reason independent from the claim of tortious interference itself." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 215 (3d Cir. 2009). At the pleading stage, therefore, Epsilon need only plead facts that plausibly suggest PowerRail acted with the specific intent to harm Epsilon's contractual relations with RTC and Egyptian National Railways, and that PowerRail's conduct was independently actionable.

Eplison has adequately pled tortious interference. The Complaint states that PowerRail had knowledge of the RTC contract and Epsilon's relationship with Egyptian

8

National Railways (Doc. 1 at ¶ 49), and that PowerRail maliciously and intentionally directed RTC to not perform and instead deliver the goods at issue to PowerRail to harm Epsilon (*id.* ¶¶ 51(a)-(b)). Taken together, these allegations plausibly suggest that PowerRail specifically intended to harm Epsilon's contractual relations with RTC and Egyptian National Railways, and that the means PowerRail employed are independently actionable for unjust enrichment. *See Kentex Asia Ltd. v. ATT S. Inc.*, No. 1:17-CV-273, 2017 WL 4071389, at *3 (M.D. Pa. Sept. 14, 2017) (allegations of intentional harm are sufficient at the pleading stage); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Count Three of the Complaint will therefore not be dismissed.

### IV. Conclusion

For the above stated reasons, PowerRail's Motion to Dismiss will be denied.

An appropriate order follows.

October 18, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge